Our second case this morning is Lee v. Village of Gays. That's case number 4100547 for the appellant, Mr. Heller, and for the appellant, Ms. Kendall. You may proceed, Mr. Heller. Thank you, Your Honor. May it please the court and counsel, this case really has an interesting posture to it. It originally was settled between the carrier and the plaintiff, and the carrier sought approval of the settlement from the trial court. And the trial court said, no, you can't settle this case. There's more damages than that. You need a guardian ad litem. The guardian ad litem means to hire a lawyer and bring this lawsuit. So the lawsuit is filed, and the city denied owning the sidewalk in question and suggested that there was an ordinance that required the people who lived adjacent to the sidewalk to make the repairs. And the plaintiff brought a motion for summary judgment suggesting that the duty to maintain the sidewalks was a non-delegable duty and that they were responsible notwithstanding the custom of having the people adjacent repair it. Motion was denied, so the plaintiff hired a surveyor. There were surveys done, and sure enough, the sidewalks are not on private property but on public property. And this goes on for about three years. And finally, the defendant, in an effort to comply with production requests and looking for the ordinance to find the acceptance of the sidewalks where they were originally accepted after construction, which was in the 20s or 30s, comes up with this 1908 ordinance that says you can't ride a bicycle on a sidewalk. Nobody had heard about that. The trial judge obviously didn't know about it. If he had known about it, he would have approved the settlement for the minors that take substance. But he didn't. He said, go away. You can do better than this. And no one knew of this ordinance. And then there comes up a 1908 ordinance. This is interesting history, but what does it have to do with the case before us? Well, the point is that nobody knew about this ordinance. Therefore what? Therefore, this ordinance hadn't been enforced. This ordinance doesn't show that the minor child was not an intended and permitted user of the sidewalk. That's what the trial court based its entire ruling on. It said tort immunity applies because the child is not an intended or permitted user of the sidewalk. And it's not intended or permitted because there's a 1908 ordinance that says you can't ride a bicycle on a sidewalk. What if it had been a 1988 ordinance? And it had been enforced even once? You mean ordinances aren't enough? They have to have a record of enforcing them? Where is that requirement in the law? Well, as I suggested in my brief, if we were here on a criminal case where this girl had been charged with a misdemeanor, basically a misdemeanor to ride your bike on the sidewalk, there wouldn't be any question that this ordinance would not apply to a three-year-old child riding her bike on the sidewalk. She wouldn't be convicted of a misdemeanor based on that statute. Too young. What if she was 17? It's an interesting question, isn't it? Well, we have an ordinance here in Springfield that I just read about in the paper that says we have to shovel our sidewalks within 24 hours of snowfall. My landlord hasn't shoveled our sidewalks since the snow hit. I was unaware. I've lived in Springfield my whole life that this ordinance existed. Is that a defense? No, I don't think so. But we're not talking about enforcing the ordinance. What the judge is saying is that this ordinance shows a current intent not to have children ride their bikes on the sidewalk. And that can't be for a lot of reasons. Number one, there weren't children's bikes in 1908. They couldn't have said, well, keep the kids off the bike. In 1908, the worst thing you could have happen by riding your bike in the street was you'd run into a cow pie. So is it your argument that the ordinance is unconstitutional? No, it's just dead. It died of disuse. Explain the process of law by which ordinances die. Once an ordinance has gone so long without use, it is considered to have died by disuse. What case in Illinois so holds? The last case, and it may have been when Your Honor was involved in the state's attorney's office in Champaign, as I recall it was from the 70s, involved an assistant state's attorney who was charged with fornication. And there's a discussion of disuse in that case. Did you cite that to us? I don't think so. Is disuse an important part of your position before this court? No, it isn't. Is disuse even a word? Well, the court used that word in discussing the fornication statute. But we hear all the time, you hear on the radio or television or reading the paper, ordinances that because of the change in times no longer have any import. And to suggest that all the cases that have considered whether children are intended users of the sidewalks say they are as long as they are under the age of 12 or 7. But those cases don't deal with an ordinance. They don't. There is no case directly on point of reference. Okay, so tell me about the fornication case. In that case, the assistant... What's its name? Sorry, I don't remember. That's all right. ...argued that no one had been charged with the crime of fornication in 40 or 50 years. And there was an issue of whether it was open and obvious, a discussion of it occurring in the backyard. As I said, that case does in fact use the word disuse and talks about it. So what happened? You mean they yelled that the criminal code didn't apply? No, they affirmed on other grounds. They affirmed on the grounds that there was evidence that they were doing it in the backyard, so it was open and obvious. As opposed to... The statute actually prohibits any relationship between unmarried people. And they claimed that that... Well, fornication and adultery survived the enactment of the criminal code of 1961. They continued on into the statutes. They weren't often prosecuted, but they were still there. That's right. But in this case, the records of Moultrie County will reveal absolutely no prosecutions ever under this ordinance. Well, accepting that representation, the difficulty I have with your argument is, what does that mean regarding an ordinance on the books? And how... Is the argument that after a certain period of time, it's kind of like a shelf date, expires if not used before when? No, not at all. The question is, on the date of this accident, on the date the little girl fell, was she an intended and permitted user of the sidewalk? And I'm suggesting to you that that 1908 ordinance, which the trial court said categorically proves that this little girl was not an intended user, has no bearing on whether the people in Gaze in 1999 or 2006 intended or permitted children to ride their bikes on the sidewalk. How would we conclude that in writing? The same way the trial court and the appellate courts have considered it, in all the other cases where they considered whether children were intended or permitted users of sidewalks, they said, we look at the facts and circumstances of our everyday life... But counsel, you missed my point. In none of those cases was there an ordinance. There wasn't. So what I want you to do is explain to me how we would write that this ordinance can be simply disregarded because of what? What follows after because? Because of the passage of time, the change in our society, and the change of circumstances that existed at the time that ordinance was written. So there is an expiration date on ordinances, short of repealing them. There has to be, as technology. What case in Illinois stands with that proposition, or are we going to be the first? Well, I know this court doesn't like to be the first. No, we don't. But no case has ever directly addressed that issue. But it happens all the time where technology makes things obsolete, where our lives change. And you read about ordinances that just don't make any sense anymore. And this one doesn't make any sense. You aren't going to have a three-year-old riding her bicycle... Whose obligation or duty or even whose power is it to undo the nonsensical ordinance? Is this something which belongs to the judiciary, or is this something which belongs to the village that enacted it? I'm not asking you to invalidate the ordinance of the village. Aren't you, though? No, I'm really not. Clearly, what would be left of it if we said it doesn't apply because it was enacted in 1908 and it hasn't been enforced since? Well, if Jimmy Johns, age 18, rides his bicycle on the sidewalk in Gaze, I suspect they could still prosecute him. All I'm asking you to do is to say that the 1908 ordinance does not manifest an intent of the village of Gaze in the year 2006 to prevent minors from riding their bikes on the sidewalk, three-year-olds from riding their bikes on the sidewalk. That's all you have to say. The minor was three years old or five years old? Three and a half. Yeah, three and a half at the time of the fall. Just learning to ride a bicycle. Could a three-and-a-half-year-old be charged with a misdemeanor? I doubt it. I don't believe they can. So you could argue that the ordinance wouldn't apply to her anyway. Are you arguing that? Well, sure I am, but I'm arguing it for another reason. The trial court said the ordinance clearly does not apply. So your argument would be a three-and-a-half-year-old cannot be charged with a misdemeanor accordingly this particular ordinance doesn't apply to this particular child. Right. And I'm going further. Therefore, this particular child was permitted and intended to use the sidewalk. Right. And that ordinance was never intended to apply to a child. Not even in the beginning. It couldn't have been. They didn't have children's bikes then. And if they did have children's bikes, then it would be okay. Because she's three-and-a-half-years-old. It wasn't like that. Pardon me? Never mind. Well. So I don't think the court has to declare the ordinance unconstitutional or dead. I think all you have to say is that it does not manifest an intent on behalf of the Village of Gays in 2006 to keep three-and-a-half-year-old kids off the sidewalk. Well, it manifests an intent to keep all riders of bicycles off the sidewalk. Well, it couldn't have meant that because there were children's bikes. Well, why do they care whether they're children's bikes or not? The ordinance says we don't want you riding bicycles on sidewalks. In fact, interesting enough, there is an ordinance in my office in downtown Urbana that says we don't want people riding bicycles on the sidewalks in downtown Urbana. No distinction for three-year-olds, even though they couldn't be prosecuted. So, Andy, are people who ride on the sidewalks in downtown Urbana outside my office, are they permitted users? You know, that's an interesting question. And the answer is? Probably are permitted but not intended. And I don't remember the last time there's been a prosecution in Urbana of people on the basis of riding a bicycle on the sidewalks right outside my office. And interestingly enough, we both know that the reason for that ordinance is not because the city doesn't want to maintain the sidewalk. Because they don't want the bicycle to run into the pedestrian. Of course. Sure. But that certainly designates people who ride sidewalks in downtown Urbana as not permitted users, doesn't it? Well, I guess the question is, if the city, notwithstanding the sign and the ordinance, permits people to ride bicycles, and they do. What do you mean permits it? They don't enforce it vigorously enough? They don't enforce it vigorously enough. Well, where does that stand? How vigorous is a vigorous enough enforcement council so as to render the ordinance valid? Well, I'm not suggesting it's valid or invalid. You asked me specifically permitted versus intended. Urbana permits people to break the ordinance. Are they an intended user? No, they're not. They're clearly not. And I think that it's awful hard to talk about permitted versus intended. I think the legislature didn't mean those. I think they meant permitted or intended. But that's not something we have to worry about today. The question is whether this ordinance back in 1908, in 2006, demonstrates the intent to keep kids off the sidewalk. If they had passed the ordinance in 1988, though, what would be your position? I think it would be entirely different. If in 2008 they had passed an ordinance that says nobody can ride a bike on the sidewalk and gaze, it would be a totally different story. They clearly would have contemplated or could have contemplated children riding on the sidewalk. Why does it matter to children? They just don't want bicycles. Whatever the age of the rider, you keep pointing out children. Why do they care? Our appellate courts have made a particular distinction for children. Our appellate courts have said that children, as opposed to adults, are permitted and intended users. Adults are not intended users. But if you're in the village of gaze and you don't want bicycles being ridden on sidewalks, can't you so enact an ordinance without, and you don't want, maybe indeed six-year-olds are more dangerous on bicycles because they're less careful riders than would be 16-year-olds. I just don't want people riding bicycles on sidewalks and down beautiful downtown gates. I don't care what age they are. Can't they write such an ordinance? I suspect they can. And it would probably be foolhardy since you then put the three-year-old at great risk for life and limb given the conditions of downtown gaze. Well, don't ride a bicycle in downtown gaze would be one option. See, parents, you know, probably lots of other places in gaze or the surrounding countryside to ride your bicycle. Just don't do it on the sidewalks in the city. The difficulty I'm having is, and I'm sympathetic to your idea here, but in the face of an ordinance I'm trying to figure out on what basis and how we can articulate that we're going to ignore it. I'm not asking you to ignore it. I'm just asking you to say that that ordinance back in 1908 did not demonstrate an intent of the village of gaze in the year 2006 to make children ride their bicycles in the street as opposed to riding them on the sidewalks in 2006. I'm suggesting that the... Well, that's the expiration date on ordinances, and I don't understand where that comes from. I'm not suggesting that it necessarily expired, but I am suggesting that given the change in the fact that there are now cars on the street in gaze and there weren't in 1908, given the fact that there's a major highway with a 55-mile-an-hour speed limit that changes to 45 for a very brief distance in gaze, didn't exist in 1908. I'm suggesting that... Isn't there a presumption that applies that all these changes in circumstances are known to legislative bodies? No. And that they can change ordinances if they wish, and if they haven't changed ordinances, that that's a presumption that they've chosen not to? I don't think there is a presumption that the legislature knows what the future will hold. I don't think there's any way.  I'm talking about the legislature in 1930, the village board in gaze in 1930, 1960, 1990. They're presumed to know their own ordinances, number one, and number two, the presumption is that they can change them if they wish based upon changes in circumstances. It's kind of like the presumption, you know, that we come up with these decisions and the legislature sees fit not to change the law in which we rendered those decisions. The presumption is, even though we know how fictional this often is, they knew of our decision and they've elected not to change it. Well, I don't know why we should engage in fiction in this particular case. We know the village didn't know about it. As Gilbert and Sullivan said, legal fictions are important things. We know that the village didn't know about this ordinance. They couldn't even find it. It took them four years to find it. How do we know that? Because it took them four years to find the ordinance while the lawsuit was going forward. They originally claimed they didn't own this sidewalk. Their pleading position was, we don't even own this sidewalk. It's not ours. So you have to sue the homeowner who's adjacent. It turns out to be the mayor. The mayor of the village is the homeowner whose house the plaintiff fell in front of and they don't even bring the ordinance that says you're not supposed to be riding on the sidewalk. But we know they didn't know about the ordinance. Well, if they didn't know about the ordinance, how did they ultimately discover it? They were doing a search for the ordinance that showed the acceptance of the sidewalks and in doing that search they found this 1908 ordinance, which was passed about 20 years before this particular sidewalk was even built. So four years earlier the village attorney had cited this ordinance to you, then you wouldn't have been here? Well, obviously we would have just been here a lot earlier. So the fact that they didn't discover it has nothing to do with your being here or not? Well, if the trial court had been consistent in seeing that ordinance and said, well, that shows that it's not an intended user, we would have had to have this discussion. It would have been four years earlier. Thank you. Thank you. You'll have rebuttal. Ms. Kendall? Thank you, Your Honor. If it pleases the court and counsel, my name is Karen Kendall and today I represent the Village of Gays, a very small village of fewer than 300 residents. Once our motion for summary judgment was filed, the plaintiff had an opportunity to file a response. The trial court set a deadline for that. The plaintiff did not meet that deadline, did not ask for an extension of time, and did not seek leave to file a late response. We moved to strike the late response, which was filed without permission of the court, and the trial court granted that. So the plaintiff is not arguing to you today that anything that was filed by the plaintiff in response to our motion for summary judgment was misconstrued by the trial court. The plaintiff is not arguing to you that the trial court was wrong in striking the plaintiff's response. Our affidavit and motion stood unrebutted in the trial court. That affidavit was of Dennis Higgins, the president of the Village Board of Trustees, who said that Ordinance 41, Prohibits Riding Bicycles on the Sidewalks of the Village of Gays, was enacted, as counsel said much earlier, and was valid on the date of the accident and remained valid on the date of his affidavit. This court has considered the plaintiff's argument here, that, well, nobody knew about this ordinance and it wasn't enforced, so therefore we can't consider it in deciding whether Section 3-102A of the Court Immunity Act applies, whether, in fact, the child in question was an intended and committed abuser. We cited to this court the Britton case... What were these things that the plaintiff was arguing to the trial court in her late response that was stricken? It was essentially this argument... I don't recall, to be honest with you. Once I determined that there was nothing there, I don't recall. I didn't review it at this point, Your Honor, I'm sorry. But I can assure this court that there were no counter-affidavits filed and nothing in the evidentiary status. So could this child have been charged with misdemeanor? I don't know that, Your Honor. I don't. And I also didn't know what that new word was. Disusity. I am going to look that up. I've never heard that before. No, I don't know. Do you think it matters? I don't see how it could matter when the issue is whether the village permitted or intended bicycles to be on the sidewalks. Is there any evidence presented that the village permitted or intended, other than this ordinance, bicycles on the sidewalks? No, there's no evidence at all. There's simply the affidavit of the president of the village is the only thing before this court. And what the plaintiff has argued to this court are a couple things. One, that, well, there was no evidence of enforcement. That meant that the ordinance wasn't valid in some way. But, as I said, the Britain decision says that even if, and that was a case where there were minor motorbikers and the city said you can't do minor motorbiking on our property and the police officers would go watch these kids do their motorbiking. But the court, both the trial court and the appellate court, agreed that even if the police aren't enforcing an ordinance, that does not affect the issue of whether it was an intended use of the property. And the case law is very clear that the language of the statute, permitted and intended, means both of those things. And as the Supreme Court discussed in the Boo case, you can have a permitted use without it being an intended use. And in the Khalil case, which is what the Britain court relied on, permitted uses do not alter the municipality's intent. So even if this was a permitted use, it would not affect the intent. Well, let me ask you this, Ms. Kendall. If I understand your argument correctly, this is all speculation anyway, because there were no affidavits submitted in opposition to the Emotion of Summary Judgment setting forth any factual vermin. So it's conceivable, for all we know, that six months before the Emotion of Summary Judgment was filed, the gays' constabulary hit a big bust on bicycles, riding, and gays, and arrested a whole slew of them. It certainly is, Your Honor. We don't know otherwise from this record. We don't know. Okay. The other point I wanted to address is the point that has made this assertion over and over, that, well, Illinois law says that people under the age of 12 are permitted and intended users, and people over the age of 12 aren't. That assertion is talking about specific ordinances enacted by the city of Chicago. And there are several cases that the courts decided, the Prokes case, the Lipper case, the Garcia case, all addressing that series of statutes. And what those ordinances in the city of Chicago said are, number one, just like in Champaign-Urbana, nobody can ride a bike in the business district, period. And then it said, well, people under the age of 12, if it's not in the business district, still are permitted to ride unless it's, or, wait a minute, let me not misquote this. No person 12 or older shall ride a bicycle on any sidewalk in any district unless the sidewalk is officially designated as a bicycle path. And in that Lipper case, you had an adult bicyclist who was trying to get to the designated bicycle path, and the court said, it doesn't matter what they were trying to do. The ordinance prohibited what they were trying to do. So you might not like it, but you still can't fall within what you have to fall in in order to avoid the Tort Immunity Act, which is you have to be both an intended and permitted user. So those cases are really, those cases are dealing with the city of Chicago ordinance, and they depend on whether or not the person... So the ordinance itself distinguishes based on age? That ordinance does, and the court there in the Garcia case, there was a constitutional challenge to that ordinance, and the court said, no, that's not a denial of equal protection. The other case the plaintiff talks about is the Brooks case, and that's a Peoria case, and there you have the Brooks case on one hand with a minor cyclist, you have the Dieffendorf case on the other hand, and again, city of Peoria, an adult cyclist. The court said in both cases that the ordinance doesn't expressly address this in the same way that the city of Chicago ordinance does. But in the Dieffendorf case they found that, well, there's no permission, so this person was barred. In Brooks they construed two ordinances dealing with bicycles and came up with the conclusion that under those circumstances, under those ordinances, that person was a permitted and intended user. So in each of these cases, the city of Chicago cases and in the city of Peoria cases, you have the courts looking to the ordinance to decide who and under what circumstances you have a permitted and intended use. Isn't there some point at which a 1908 ordinance becomes useless? You know, the older I get, the more I venerate our history and the value of things not falling into disuse or whatever it is. So no, I don't believe there is any point at which something simply falls out of fashion. But what about the reverse? In 1908 they didn't have kids' bicycles. I don't know that. I know there's been an assertion made, but I don't know that. I googled it. There have been law review articles written about courts googling. Let me ask, does this ordinance apply to a person who as a matter of law cannot be charged with a misdemeanor? I don't know why it does not, Your Honor,  was controlling the use of the property. And if you would reach a conclusion that says, well, it doesn't apply to children, then no municipal government would ever be able to control any use of property. We just say, well, kids can pretty much do anything they want. You know, they can use fields, roads. No, just don't charge them with a misdemeanor. Right, but the fact that you can or you cannot, and I don't know this because it didn't come up in time for me to do any research on it, so the fact that you may or may not be able to enforce this ordinance against the child doesn't make any use by a child an intended use. The village ordinance is clear. It intended to prohibit the use of bicycles on the village of these walks. They intended for persons who could be charged with a misdemeanor not to use the sidewalk, but not to persons who cannot be charged with a misdemeanor. What's wrong with that? I would say that's an irrational view. If we don't want bicycles on the sidewalk, why would we say, well, there's this whole – what if I really like to ride little bicycles? I mean, is it that they're littler that would be okay? I mean, why would it be okay to have bicycles ridden on the sidewalks when the village doesn't want them on the sidewalk, whether or not a person is of an age to be charged with a misdemeanor? Isn't the village entitled to – Is it unreasonable to say that they used the word misdemeanor because they intended it to apply to adults but not children? I mean, they didn't have to put the term misdemeanor into that ordinance. I don't think that's a reasonable assumption. I think the reasonable inference to draw from the language of the statute is that the village, without exception, did not intend bicycles to be ridden on the sidewalk. Well, they didn't need to put in a penalty at all. They could have just said it's the policy of this village that no bicycles shall be ridden on the sidewalks. Well, a policy that would not be enforceable. Yeah. But this isn't a criminal case. This is a case of whether there's a policy that says bicycles may be ridden, whether you're an intended and permitted user. But what we look to are the ordinances, as far as I know, ordinarily do have a penalty involved for a violation, even if it's a very minor penalty. And the criminal case I cited to this court, I think, was a very good example of that, where, boy, a bicycle down the sidewalk was not a good idea at all, for I can't remember what his name was, that he ended up with the drug charges against him. There isn't any case law that I'm aware of that says that we don't look to ordinances to determine the intent with respect to intended and permitted use on public property. The reason we have that examination is because the General Assembly decided that local units of government need protection from tort liability and that they have the ability to limit the use of their property. Any ruling to the contrary would be inconsistent with the fundamental purpose of the Tort Immunity Act, which asks the trial court and this court to determine what that particular unit of local government designated to be an intended and permitted use of the property. Thank you. Thank you. Rebuttal, please. Thank you, Your Honor. The 1908 Ordinance could clearly not have intended to prohibit minors from riding bikes on sidewalks, particularly in light of the fact that only adults rode bikes in 1908. How do we know that? Ms. Gandel says she didn't know it. I don't know that. What in the record supports that? The public record, as Your Honor points out, it's a matter of historical fact that bicycles for children were not introduced until 1908. Well, that is, children couldn't ride bicycles for an adult. I don't know how a three-and-a-half-year-old could reach the pedals on a bicycle. What about a seven-year-old? A big one, maybe. Well, you know, historical fact, you know, this is… There's another historical fact that's interesting in this case. The plan of subdivision, which is in the record here, because we had the surveyor come in and try to figure out whether the sidewalk was on public property, this subdivision wasn't platted until about 1922 or 1925. So the Ordinance couldn't have been considered for this subdivision or this sidewalk either because it was enacted some 15 years prior to the time there was any residential zoning in the village of Gates. So they didn't pass this Ordinance with the particular sidewalk that we're talking about either. But does that matter? I don't think it does. Because the city just annexed this subdivision out here. I'm sure that snow ordinance I referenced earlier would apply to those new sidewalks. Except that people didn't live in Gates prior to the time they put the subdivision in and annexed the village of Gates at that time would have been simply the downtown area, which they said, don't ride your bicycle. So you seem to be arguing that the village needed to pass a new ordinance every time a new sidewalk… No, no, I'm not suggesting that at all. I'm just pointing out that there are a number of historical facts that indicate that this village didn't intend that 1908 Ordinance to apply to the circumstances that we have. Can you imagine if there was an ordinance passed in 1943 that said you can't have a phone that's not connected by wire to a major telephone company? We'd all be carrying around our cell phones illegally. But that doesn't mean the legislature went through and looked for old, crazy ordinances and did away with them all. I think, Your Honor, you asked about the Champion case. I believe that's the Dunn case, which we do cite on page 5 of our brief. Counsel, there have been bicycle cases. Ms. Kendall cited some of them from Chicago. And you have cited some. And I think the city, the village, could have changed its ordinance just in response to those cases. Thinking, hmm, this could be something here we want to take a look at. There's absolutely nothing in the record that they ever considered any of that. And the counsel's suggestion that the village didn't know that this was going on applies in the face of the fact that the mayor is the person who's sidewalked. This little child's riding up and down. And yet there's no complaint. There's no suggestion that the mayor said stop. It's one of those cases where history has changed and the ordinance didn't. We don't believe that that ordinance shows a current intent to make kids ride their bikes in the street. Thank you. Okay. Thanks to both of you. The case is submitted.